The next matter on today's agenda is number three, number 124289, People State of Illinois, Jonathan Lindsey. Good morning, your honors. May it please the clerk, counsel. I am assistant attorney general here today on behalf of the appellant of the people of the state of Illinois. In this case, officers used a trained drug detection dog to conduct a sniff and obtained a positive alert in the common area outside a defendant's motel room. They used that positive alert to obtain search warrants. The appellate court held that the evidence in this case should have been suppressed. But this court should reverse for two reasons. First, the use of the trained drug detection dog in the common area was not a Fourth Amendment search. And second, even if it was, the officers could rely in good faith on precedent to be where they were and to conduct the dogs, and thus the exclusionary rule should not apply. Now, turning to the first basis of reversal, that there was no Fourth Amendment search, the defendant's primary argument and the arguments relied on by the appellate court is that the dog sniff violated the defendant's legitimate expectations of privacy. And this argument relies primarily on the United States Supreme Court decision in Kylo v. the United States. In that decision, the United States Supreme Court held that the use of a thermal imaging device to detect the infrared radiation emanating from inside the home constituted a search. The court explained that the use of a highly advanced sense-enhancing device not in use by the general public to obtain information about lawful intimate activity in the home was a search. And the argument is that a dog sniff should be considered a sense-enhancing device under Kylo, the same as the thermal imaging device. But there's a big problem with this argument. It has been raised and rejected by the United States Supreme Court. Thus, in Kibales, this was the exact argument raised. There was a traffic stop, and the officers used a trained drug detection dog to conduct a sniff during the stop of the car, of the inside of the car, which obviously included other people inside the car. The defendant argued that this should be considered a sense-enhancing device under Kylo, but the United States Supreme Court said, no, that's not the case. And it explained why. The dog sniff only revealed the presence of contraband, and there was no legitimate expectation of privacy with respect to the possession of contraband. Now, the defendant points out that in a subsequent case, Florida v. Jardines, there was a concurrence, which suggested that Kylo might apply to dog sniffs. But, of course, this was only concurrence, and concurrences and dissents do not make the law. The law is made by majority opinions. In that case, was the majority dealing with the property-based analysis or with the expectation of privacy analysis? In Jardines, Your Honor, the majority very explicitly was dealing just with the property-based analysis. And, in fact, it explicitly decided not to decide and not to even analyze what the reasonable expectations of privacy. So perhaps your argument that the majority rejected the view that under the expectation of privacy analysis that this was, in fact, a search, they didn't quite reject it. They just didn't meet it. They didn't engage on it. Well, Your Honor, the opinion, the concurring opinion, which suggested that Kylo would apply wasn't able to garner a majority of the justices. And we have a previous opinion by the Supreme Court, which did garner a majority of the justices in Cabal's rejecting the argument. So we have a majority opinion rejecting the argument and then no subsequent majority opinion in any way rehabilitating or reversing the prior decision. So just one last question on that. Cabal's, of course, is a traffic stop case. Certainly there's a different analysis when we're talking about a home. Well, Your Honor, two things about that. First, I'd point out that in Cabal's the dog was, of course, sniffing the people. And people are protected even before homes. They come before property in, of course, the actual list in the Fourth Amendment, but also in who we're protecting. The Fourth Amendment protects people, not their homes. And the reason we protect homes in particular is because of the people inside of them. But second, the logic, if you look at the rationales of Kylo and Cabal's, would indicate that the rejection of a dog as a sense-enhancing device under Kylo, the rejection of that was not based on location. So why was the sense-enhancing device, why would that not include a dog? Well, a dog doesn't give any detail about anything other than the possession of contraband. There is no intimate activity for which any information is given. And so what was Kylo worried about? Kylo was worried about the lawful intimate activities inside the home, to give the example of what time a resident might take a bath. But there's simply no time, no place where defendants or anyone has a legitimate expectation of privacy in contraband. And there's no information about other activities. So for instance, we might have activity where if it was done in public, there would be no expectation of privacy. But if it was done in the home, there might be expectation of privacy. Someone might want to sing at home alone. That person doesn't like to sing in public. That person might have an expectation of that singing remaining private. That person might have a conversation in the home. That's a lawful activity. Whereas if that person was in public, that person might not have the same expectation of privacy. If that person was talking in a crowded room, that's a lawful activity. Isn't it – I'm sorry, but isn't that circular? I mean, you're saying – we have very well-developed ideas of expectation of privacy. But you're saying that if – that there is no expectation of privacy if someone in the home is in possession of contraband, that there no longer is any expectation of privacy. Therefore, what's the meaning of the Fourth Amendment? Your Honor, I'm not saying that. The United States Supreme Court is saying that. The United States Supreme Court is saying that there's no legitimate expectation of privacy in the possession of contraband. It's simply – that is simply the case. And if you have a device that only reveals that, that is why the United States Supreme Court has gone on to say, and this court, too, has gone on to say multiple times, in the Butte case, in the Bartel case, that a dog sniff is sui generis. It's its own thing. And all it does is it reveals unlawful activity. And there's simply no expectation of privacy regardless of where you are. The method is not circular. If we could build a machine that would detect other unlawful activity, maybe it wouldn't be so sui generis. If we could build a machine that detected whether a person had committed a murder, and we – and that's all it did. It seems beyond our capacity at the moment. But if we could build one, and we had this machine, and we focused the people on the street as they walked by, and it said, not a murderer, not a murderer, a murderer, well, then we might say, well, that's useful information. And you don't have a legitimate expectation of privacy in that information. It's just illegal activity. And if we then were to focus that onto a residence, we wouldn't say you have – and that's all it did. It said there's a murderer inside or not. We wouldn't say, well, you have a legitimate expectation of being a murderer because you're inside your home. Now, it's true we might think we don't have such a machine, and that's a problem in law enforcement. Standing outside the door, a great, wonderful technology could detect sort of blood samples inside. Blood samples of someone who's missing. How does that work? Well, so, again, first of all, we're just talking about the reasonable expectation of privacy analysis, not the property analysis at this point. If we had a device, and all it did – and there was someone who – a child who was missing. And if this device – and we had reason to – first of all, we'd have to look into the facts, whether this could reveal any more intimate activity. So a person missing, you know, there could be – a person might be missing on purpose. And then there might be lawful activity. For instance, a person might be hiding, not want to be found. There would be all sorts of lawful activity. And that's the concern. But if we could really have a device that would – that we knew there was a crime had been committed, all it told us, all it told us, was whether or not this crime had been committed, whether or not there was evidence of this crime in a particular residence. And I think that's right. But we just don't have those – That's a great point. That's right, that it wouldn't invade legitimate expectations of privacy. Now, of course, you would have to then, like in this case, depending on the circumstances, in this case, that information was then used to establish probable cause to get a search warrant, which would then allow entry into the – in this case, it's a motel room, not a residence. Certainly with motel rooms. But your Honor's hypothetical is what the residence would be. But the problem is that we seem to have skepticism with respect to whether a dog sniff actually does what the United States Supreme Court has told us that it does. We seem to have skepticism that the rule that the United States Supreme Court should actually apply. But that is what the United States Supreme Court has said. It said a dog sniff does not reveal any legitimate expectation of privacy because it only does one thing. It tells us whether there is a possession of a non-driven animal. And so there's – that's – and so because that's been rejected, Kylo does not apply to dog sniffs, and so there's no reasonable expectation of privacy that was implicated here, no legitimate expectation of privacy, and thus no forced minimum search under the expectations of privacy analysis. And again, that was the argument focused on by the appellate court and defendant. Mr. Malamud, would allowing searches like this unfairly target people with lower incomes or result in arrests of lower income people because of where they live or maybe not own property, not own a home? Well, no, Your Honor. It's not clear that allowing dog sniffs to detect contraband would unfairly or improperly burden any particular segment of the site of your property. For one thing, dog sniffs, of course, can occur not just in residences or motels, but they can occur all over at traffic stops. But with respect also to the specific location, as we discussed in our brief, there's no particular reason to think that dog sniffs outside hotels would disproportionately burden certain people. There are hotels which are very expensive, and there are hotels and motels which are inexpensive. There are homes in which very rich people live, and there are houses in which rich people live, and houses in which poor people live. There are apartments in which all that going on. But specifically with hotels and motels, there's no reason to think that this would affect the rights of particular groups of people. And moreover, there's no reason to think that the other, in general, motel or hotel residents would necessarily not want law enforcement to be able to conduct search from common areas that would detect unlawful activity going on, potential dangerous activity going on in the rooms around them that they would be potentially affected by. And so, as Your Honor alluded to, there's another test, which is the property-based analysis. And although this was not relied on by the appellate court below, we address it briefly. And in that case, under that analysis, which was set forth with respect to a home, a house, excuse me, in Florida v. Jardines, the test there is whether law enforcement has engaged in an unlicensed physical intrusion onto a constitutionally protected area, a home, or its curbage. In order to obtain information. As we pointed in our brief, the courts have consistently found throughout the country that this does not apply to hotel or motel common areas. And the defendant has not put any cases to the contrary. And while it's true that this court has extended that to apartments, the same would not apply to motel or hotel common areas because the possessory interests in the common area of a hotel or motel are simply different than in a home, a permanent home. And turning now to the second basis of reversal, the good-faith exception. Even if this was a search under one of the analyses, the good-faith exception to the exclusionary rule should apply. The exclusionary rule is a prudential doctrine designed to deter culpable police conduct. But there can be no culpable conduct by officers when they can act in objectively reasonable good faith that their conduct was lawful. And that includes by precedent of the courts. Now, the defendant wants the rule to be that an officer can only act in good faith when the exact fact has reached an appellate court and has made its way into an appellate public decision in Illinois. But that can't be right because there's simply too many variations in fact patterns and cases now in the real world. Instead, the question is whether it's reasonable. And here, in this case, it was reasonable because we had cases from this court making clear that common areas have reduced expectations of privacy. We had cases from this court and the United States Supreme Court holding that dog sniffs were not constitutionally relevant under the Fourth Amendment. And we had courts around the country, which in fact did deal with this exact scenario of dog sniffs in no-talk common areas and found that they were not Fourth Amendment searches. And given this, it was reasonable for the officers to believe that their conduct was lawful. So unless there are any further questions from the court, we would ask this court to reverse the judgment of the appellate court and reinstate the judgment of the Supreme Court. Thank you. Thank you, Mr. Malinowski. Ms. Moore. May it please the Court, opposing counsel, good morning, Your Honors. I'm Edith Rosario-Moore here on behalf of the defendant, Apolli, Jonathan Lindsay on behalf of the Office of the State Appellate Defender. This court should affirm the appellate court's decision that the government's warrantless use of a drug detection dog on Mr. Lindsay's motel room door was a Fourth Amendment search. Now, as my opponent has noted, this decision is based on Kylo, and it's a logical, well-reasoned application of that decision. Now, the relevant privacy interest in that case is the same privacy interest here. In that case, the court found the defendant's reasonable expectation of privacy in his home, which is, in the case of the interior home, a minimal expectation that exists and is considered to be reasonable with deep roots in the common law. That's the characterization in the court's view. That was violated when the government used a sense-enhancing device not available to the general public to discover what was otherwise undiscoverable in the house without a physical intrusion. So it's the same privacy interest here, and I think I can illustrate that best with a hypothetical. So let's say I'm staying at the American Motor Inn, and I can see through the curtains the outline of a person standing at my door, and they're facing the door, doing nothing else. And this goes on for more than a few moments. I would be deeply unsettled, because there's a justifiable expectation that people don't do that. The implication, of course, is that they're either physically trying to get into my room, or that they're snooping, trying to find out information that's protected by my expectation, privacy in my dwelling. So that's why the privacy interest here is not in the hall, as the state argues. How do you address the state argument that Caballos indicated that a dog sniff was not like a thermal imaging, and it only detected the presence of contraband and didn't reveal intimate details of the home? Well, there are a couple of reasons why that's distinct from the issue here. So, of course, Caballos dealt with a dog sniff being conducted during a lawful traffic stop. Caballos did, the court did reason that it was consistent with Kylo, because critical to that case was that the heat detection device was capable of detecting lawful activity in the home. And so the other part of the Kylo case that also is critical is the location. And it's not just the location. In Kylo, that Fourth Amendment protection has never been dependent on the quality or quantity of information obtained. And that's not just an isolated statement. It is a part of the basis of the Kylo rule. So going to some of the questions that you asked my opponent, Justice Tice, this rule that police cannot use a sense-enhancing device not available to the general public is based in the idea that we don't differentiate the kind of threat in the home. There's a bright line at the entrance of the home, because we don't want people to be at the mercy of developing technology. Ms. Moore, Caballos said the use of well-trained narcotics dog generally does not implicate legitimacy, privacy interests, because unlike a thermal imaging device that will detect perfectly lawful activity, a well-trained narcotics dog reveals no information other than the location of the substance. So I don't know that I heard an answer to my question of what we do with that. I think that you can't take that out of context, Your Honor. We're dealing with a lawful traffic stop dog sniff. And that reading of Kylo completely ignores the second half of the decision that says explicitly we don't differentiate at the home. Because for precisely the reason if the government went back and said, okay, now we're going to develop a device that can just detect the outline of a cannabis plant. I'm not saying that this is reasonable, but certainly 100 years ago they probably wouldn't have thought that you could develop a device to detect heat in the home either. I don't know what the government can produce. And that is why the court explicitly said we're taking the long view of the Fourth Amendment. And we're going to hold that at the home if there's a sense enhancing device not available to the general public, we're going to say the government can't use that without a warrant or a probable cause exception. So of course we're not saying that the government can never use a drug sniffing dog on the residence of the door. It's just that the Fourth Amendment provides the balance between the expectation of privacy that we all have in our dwelling spaces and legitimate government interests, law enforcement interests. And so I think that that part of cabayas has to be read in context. Otherwise, a part of the KILO rule would not hold. And I don't, yes? Counsel, you use the words home and dwelling and residence kind of interchangeably. So is it your position that that's, they're coextensive? I do. I do. I think dwelling is the best way to describe different spaces because of course there are some physical differences. We acknowledge in our briefs that when you're living in a multi-unit dwelling, the case law is clear. There is a reduced expectation of privacy as to what you knowingly expose by way of sight, smell, and sound. But that minimal expectation of privacy, Justice Furman, that you have in the interior of your home doesn't change from dwelling space to dwelling space. And so yes, here we're talking about a motel room. It's true. But the main difference between a motel and some apartments and single family homes would appear to be transients. And that doesn't mean we don't have a minimal expectation when any of us check into a hotel room. That's our home for the time that we're there. Now clearly, as I said, there are some differences. But we're talking about that minimal expectation of privacy and that's the relevant privacy interest here. So it follows the person? Is that what you're telling me? It follows the person and the location. I don't think the minimal expectation of privacy drops so low that some dwelling spaces aren't there. I'm sorry, I'm not clear. Because if it follows the space, you know, those are people living in a car. Right. Well, I think the law is clear that because of the public nature of roads, if you live in your car, you have less of an expectation of privacy if you're living in a car. But I think the law has been clear that a motel, a hotel room has Fourth Amendment protection. Certainly the law enforcement needs a warrant to get into that space to search. And so I think that's why the Cairo privacy interest applies here. Ms. Moore, with regard to the motel room, doors are typically outside, open to the street and to the public. If the sniff happened outside the traditional motel room, would that change your argument? It doesn't because the purpose of the sniff is to discover what's inside of the room. I think that that's the reality here. Law enforcement's not trying to find contraband in the common area. They're using that space. That's the vantage point that they're using to get into the room to discover what's inside the room. And that's why the reduced expectation of privacy doesn't include dog sniffs because it's not a plain smell. We're not talking about the burning scent of cannabis that can be smelled anywhere. We're talking about a drug detection dog going to the door, and in this case, Officer Pena going to the seams to detect the odor that's inside the room. And so the relevant privacy interest is the Cairo privacy interest, not the reduced expectation of privacy interest that the state purports. And this was the approach, as my opponent said, in the Jardine's concurrence. It was the approach by the Seventh Circuit in Whitaker, and that's what persuaded the appellate court here. Whitaker explicitly distinguished cobias in place from the dog sniff of an apartment because the sniffs in those cases didn't implicate the court concern of protecting the privacy of the home. Back to the motel and hotel. Does that make a difference, the fact that motel or hotel employees have the key to the room? Does that reduce expectation of privacy by the person who is in the room? I think it speaks to norms. I mean, certainly when you, I'm sorry, Your Honor, when anyone rents a hotel room, you have exclusive control over that room for the time that you're renting it. And so one recognized way to exclude anyone from even approaching the room is the do not disturb sign. The hotel office offers you a service to clean, but you can reject that while you're there. Certainly some hotels now say let us know if you don't want the room cleaned at all, save the environment. So they're definitely different norms. But I don't think just because you have a cleaning service while you're at the hotel room, it means that you have a reduced expectation that when you close that door, the door is closed. Now if this court isn't persuaded by the cobias not overruling Kyle's holding that a dwelling's Fourth Amendment protection has never been tied to the quality or quantity of information obtained, then the cobias court's reasoning that a dog sniff only implicates contraband is undermined by a couple things. As my opponent pointed out, there's some skepticism with dog sniffs. We noted that as Justice Souter did in his dissent to cobias, that the foolproof dog sniff is a myth and that there was quite a bit of data that shows that some of these sniffs can be false. And that, of course, would be the first step in opening up a dwelling to reveal those intimate activities. The state did not respond to this point, but the state did respond to a point that at the time of the search, some use of possession or contraband was legal because of medical marijuana. Now we did not, as the state asserts, argue that the dog sniff was not a search because Mr. Lindsay was a medical marijuana patient. Our point in that is that the warrant application here explicitly sought cannabis. It's in fact the only particular contraband that was listed in the warrant application. And we made the point that the dog, there was no proof that the dog was trained only in detecting the heroin that was eventually discovered, but that this point just shows that the reasoning is starting to come apart in jurisdictions where substances that were previously contraband are now not. And I think that this really ties back to Cairo in some ways because, you know, what's contraband is changing. And so the idea that we don't want people in their homes and their residences and their dwellings to be at the mercy of technology, I think this goes hand in hand. So as of January 1st, in the state, there's going to be some flux in the law with the use of drug detection dogs and whether or not they can detect contraband. Are you asking us to discount cabayas because of faulty reasoning or dissent? I don't understand exactly what you're asking. I'm saying that the logic of cabayas starts to come apart and to be undermined in jurisdictions where some use of substances that were previously contraband are no longer contraband. I think that cabayas did not distinguish Cairo in the way that the state argues. But I'm saying that that plus the idea or the fact actually that some dog sniffs are false undermine that reasoning. Undermine or not, if we think it is relevant with respect to the whole Cairo analysis. We can't just do a waiver based on a dissent or perceived faulty reasoning, can we? Right, no. But of course our position is that you won't even have to get there because the Cairo reasoning applies. Now in response to the privilege argument, the state argued that the police didn't conduct a search because there was no curtilage for the sake of completeness and we responded in kind. And as we argued, a motel room can have curtilage. It would be a logical extension of this Court's decisions in Burns and Bonilla. Mr. Lindsey's room was in an alcove with only one other room, shielded by a door. That door was the threshold of Mr. Lindsey's room. And we analogized to Hopkins, which was an Eighth Circuit decision where the Court found that even though only two done factors applied, it was not enough. This is an area of law that is developing. The state says, you know, the overwhelming majority says that there is no curtilage in these spaces. Certainly, it is developing in spaces like a townhome in Hopkins, which had a path. It had no big common area, but it had a path that opened up to two doors and the defendant's residence was one of those doors. So likewise, the area in front of Mr. Lindsey's home was curtilage because the use of that space was directly tied to his right to retreat. The state also claims there was no implied license violated because motel guests have no authority to limit or even know who is in those common areas. We alluded to some of those ideas of limitation in our brief. Of course, as the Whitaker Court noted, no one expects anyone to put up chairs in front of their door of any dwelling and have a party. That's linked to the right to retreat. We discussed how you could exclude people from even approaching the door with a do not disturb sign. And going back to my hypothetical, if I wanted, I could call hotel management or even the police and have that person excluded. So there is some expectation of excluding people from the space right outside my door. And there is no implied license for anyone to come up to the door of my dwelling with a sense enhancing device to find out what's inside of it. But we began with a CATS analysis because that can be applied to different kinds of dwelling spaces. It can create a uniform body of law that looks at that minimal expectation of privacy, which was outlined in Kylo. Three of the five majority justices in Jardines, so a majority of the majority, concurred on this point to say we could have just as easily decided this case based on a reasonable expectation of privacy analysis because of that minimal expectation of privacy. So a CATS analysis can apply to the front door of any dwelling. As to the good faith exception, the appellate court didn't apply it because there was no binding authority. We did not argue that there had to be an exact fact pattern as the state asserts, but that a reasonably well-trained officer would have relied on a few months of amendment protection. So a motel room is more like a home than it is a car or a suitcase in an airport. And Kylo said, of course, that you can't use a sense enhancing device to get inside and find out what's going on in a residence. The police also should have been aware of the holdings in Jardines and the appellate court's decision in Burns because at the time of the search in April of 2015, the appellate court decision had already been decided for a few months. Now that would tell police that even though you can use a dog, a drug-suffering dog, during a traffic stop, when it comes to the front door of a home and now the front door of an apartment, there are limitations. And so the state said, well, those were based on property analysis, so the police wouldn't know that that applied to them. But I think that's tasking law enforcement with knowing the intricacies of legal argument, and I don't think that that's what good faith reliance is. Certainly the law is in flux. We're here now. Arguing about which analysis applies. And so it's not good faith reliance when you're signaled by case law that things have changed and it's not clear. That's testing the waters. Now certainly law enforcement could test the waters. They could go to the door of yet another residence and say, let's see if we can do this. But then you don't get the benefit of good faith reliance. Because that is an officer acting in reliance on law. There was at least one federal case holding that dog sniffs of hotel rooms do not violate the Fourth Amendment, the Robey case. And this court had held in Eichelberger that motel guests have reduced expectations of privacy in areas outside of the rooms compared to those outside private residences. Why wouldn't that be enough of a good faith exception to apply? Well, first, Robey was decided in 1997. That's well before the decision in Kylo, Gobias, Jardines, and Burns. And for the reasons that I noted, that the police would have been on notice given the decisions in Jardines and Burns, I don't think they could reasonably rely on an Eighth Circuit decision. Now as to the reduced expectation of privacy in Eichelberger... You would have them rely on Jardines where the police would have to assume that property-based curtilage approach would apply to motels? No, I would have them rely on Kylo, Jardines, and Burns, which is this state's application of Jardines to yet another residence. I think the law was in flux. The search was April of 2015 and Burns was decided in January of 2015, so it was in place. And the prior court noted that as well. As to the reduced expectation of privacy, it's what we noted before, that that only applies to what you can... which you may only expose by way of sight, smell, and sound. And this court held in Bonilla that overhearing a private conversation is different than a drug detection dog sniff. I'd just like to note, too, the questions about discriminatory effect would occur, and this court in Bonilla noted that distinguishing, allowing police to sniff the door of an apartment but not a house would be a distinction, either without a difference or with an unfair difference. Whitaker noted data from the census survey of 2013 noting that there are lines along income, race, and ethnicity where people, between people living in single-family homes and multi-unit spaces. And the differences between apartments and motels don't rise to a reduction in that minimal expectation of privacy. That's about stability and transience. And, of course, you have all kinds of people living in hotels. You can be a very wealthy person living in a hotel in New York, you can be a freelancer living in one of those extended-stay holiday inns, and you can be a person living at the American Motor Inn because you can only afford a room every so often, or long-term. Certainly, people do live in motels. It is home for some people, and it must be noted that some apartments are the same. So while living in a hotel or an apartment may not result in knowing your neighbors as well, it certainly should result in having that same minimal expectation of privacy. The only reason that the state presented was the idea that, quote, we should not assume that the majority of motel guests would prefer that officers would be unable to gather information about illegal conduct. Sorry, if I could just finish, is that okay? Just, that's general crime control. There's no public safety rationale to make more transient spaces where people live to have dogs sniffing and patrolling those areas. And so the entrance to the room is more like a home than a car, and we ask that this court respectfully affirm the appellate court's decision below. Thank you. Good morning again, Your Honors. A few quick points in rebuttal. As questions by the court make clear, the defendant's position is that the reasonable expectations of privacy analysis would apply to no matter where the officers are standing. So they could be standing on a public sidewalk. They could be standing on the road. And it would apply to apparently no matter, to anywhere that would qualify as overnight dwelling. It's not clear where this would end. It could be, and perhaps it doesn't even need to be an overnight dwelling. It could be an overnight car on a train, or a particular unit, maybe of a train that has a privacy door. Perhaps it would even apply nowadays in airports. They are bringing out these, I think they're called nap pads, which are basically little sort of motel-like rooms in the middle of airports in which you can rent them for a short time, a long time. Presumably inside them you would have some expectations of privacy. But the defendant's argument seems like it would extend this logic to even these sorts of examples. And so it's a really quite extreme argument. Now, that argument is undermined not just by the decisions by this court and other courts that have discussed the reduced expectations of privacy in motel rooms and hotel rooms. Compared to residences. But by Cabal's. And it's also made clear by the questioning and responses. The defendant does not approve of the logic of Cabal's. And it's notable that when Your Honor exactly quoted from that case, that the defendant, the counsel, criticized that reading as ignoring the logic of Cabal's. As ignoring an element of Kyle. And we can all quibble or very seriously argue with the logic of the reasoning of Cabal's. But it's the Supreme Court's decision. The United States Supreme Court's decision. And it doesn't matter if a majority of the majority of some three justices of a five-justice majority had a certain opinion. All that matters is what opinion the majority has. And here we have the majority in Cabal's clearly stating that there are no reasonable expectations of privacy implicated by a death sentence. Because there was no legitimate expectation of privacy in possessing conjugal. Turning finally to the good faith exception. Defense counsel's argument would in fact turn the good faith exception on its head. Defense counsel argues that even if Jardines had nothing to say about an officer standing on a public sidewalk using a dog, a trained drug detection dog, to sniff inside a motel room. Because Jardines would have nothing to say about that because the dog would not be standing on the curtilage of the unit. Even in that case, we should task, we should find an officer culpable for using that method, which might still be legal. Because of Jardines, which stated that it would be legal under a separate, under one particular kind of analysis on the property. And in fact, it flips the whole idea on its head of who, that we should be giving the benefit of the doubt to officers who act in reasonable reliance on established precedent. And it's asking the court to think that officers cannot understand opinions, and in fact, cannot even, should not be able to act in good faith on properly understood analyses of opinions. And that can't be the good faith exception, or what the good faith exception means. So unless your honors have any other questions, we would ask this court to reverse the judgment.